**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WANDA S. GAMACHE,
Plaintiff-Appellee,

v.

MICHAEL J. CAVANAUGH, in his
individual and official capacity;

MARILYN JOHNSON, in her individual
and official capacity; ROBERT B.
PERRY, in his individual and official
capacity,
Defendants-Appellants.

No. 95-1829

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Senior District Judge.
(CA-94-2308-3)

Argued: January 31, 1996

Decided: April 12, 1996

Before WIDENER, LUTTIG, and MOTZ, Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Carl Norman Lundberg, Chief Legal Counsel, SOUTH
CAROLINA DEPARTMENT OF PROBATION, PAROLE & PAR-
DON SERVICES, Columbia, South Carolina, for Appellants. John

Allen O'Leary, O'LEARY ASSOCIATES, P.A., Columbia, South Carolina, for Appellee. **ON BRIEF:** Laura P. Valtorta, CROMER & MABRY, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Appellants, Michael J. Cavanaugh, Marilyn Johnson, and Robert B. Perry, appeal the district court's decision denying them Eleventh Amendment immunity and qualified immunity on appellee's claim that her termination violated the First Amendment. Because appellants were entitled to Eleventh Amendment immunity on the claims naming them in their official capacities and to qualified immunity for the claims against them in their personal capacities, we reverse the judgment of the district court and remand with instructions to enter summary judgment in favor of appellants.

I.

Appellee, Wanda S. Gamache, was a probation and parole agent employed by the South Carolina Department of Probation, Parole and Pardon Services. On February 22, 1993, Gamache was riding in an unmarked state vehicle on official business when, while stopped at a traffic light, she was approached by a man who had been riding in another vehicle also stopped at the light. The man, for unknown reasons, pointed a pistol at Gamache. In response, Gamache displayed her badge, causing the assailant to flee. Gamache pursued the vehicle, and in the ensuing high speed chase she drove 70-75 miles per hour in a 35 mile per hour zone without a siren or flashing lights. When the other car finally stopped, Gamache drew her gun and ordered the three occupants to lie face down on the ground until local law enforcement arrived.

2

Following this incident, Gamache, on her own authority and without approval of her supervisors, authorized the issuance of warrants against two of the men with herself and the South Carolina Department of Probation, Parole and Pardon Services as the prosecuting authorities. Upon learning of these events, Gamache's supervisor, Robert Perry, insisted that she dismiss the charges. Gamache refused and soon thereafter was fired. Her letter of termination listed several reasons for her discharge, including the unauthorized use of state equipment, failure to comply with state regulations, willful violation of laws, and gross misconduct. The letter specified that Gamache had driven over twice the posted speed limit in a State vehicle, flashed her badge, used her weapon and purported to act as a police officer despite the fact that her authority extended only to parolees in her custody, and demonstrated a "lack of remorse" by refusing to withdraw the warrant as requested by her supervisor. J.A. at 25.

After filing an unsuccessful administrative grievance, Gamache filed the instant federal action against her supervisors, Cavanaugh, Johnson, and Perry, alleging under 42 U.S.C. § 1983 a violation of her First Amendment right to petition for redress and seeking both actual and punitive damages. Appellants moved for summary judgment on the basis of Eleventh Amendment immunity and qualified immunity. The district court denied the motion for summary judgment. This appeal followed.

II.

It is unclear whether or not the district court recognized that the Eleventh Amendment provides state officials immunity from suit for damages in federal court filed against them in their official capacity, because the district court's opinion makes no reference to the claims against the appellants in their official capacity. Under the Eleventh Amendment, however, neither a State nor its officials in their official capacity may be sued for damages in federal court without their consent. Moreover, as the Supreme Court held in Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), neither a state nor its officials in their official capacities are "persons" under section 1983. Thus, the appellants were entitled to summary judgment on all of Gamache's claims naming them in their official capacity.

3

III.

With respect to the claims against appellants in their individual capacities, the district court rejected appellants' defense of qualified immunity, determining that appellants had "fail[ed] to submit sufficient evidence to avail themselves of this affirmative defense." J.A. at 95. However, the issue of whether appellants' actions violated clearly established law is a question of law, and appellants do not have to produce "evidence" in support of qualified immunity. Since appellants violated no clearly established rights by discharging Gamache for her failure to dismiss the warrant, the district court erred in not granting summary judgment to the appellants on the basis of qualified immunity.

Gamache points to a number of cases to support her claim that the appellants violated her clearly established rights. However, the cases cited by Gamache are general cases merely establishing a right of access to the courts and that public employees cannot be fired for exercising constitutional rights. These cases, of course, discuss the constitutional right alleged to have been violated at too high a level of generality. See Anderson v. Creighton , 483 U.S. 635, 639-40 (1987). As the Supreme Court has made clear, "[t]he contours of the right [alleged to have been violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640; see also DiMeglio v. Haines, 45 F.3d 790, 803-04 (4th Cir. 1995).

Appellants direct the court to two cases which hold that a sheriff's deputy has no right to file a warrant in the face of policy or orders to the contrary. These cases indicate that appellants' actions did not violate clearly established law. The first, Funn  v. Winston, 612 F.2d 880, 881 (4th Cir. 1980), concerned a deputy sheriff who filed a criminal assault warrant against a prisoner who had assaulted him. As in the instant case, the sheriff ordered the deputy to dismiss the warrant, the deputy refused, and the sheriff then fired him. The court held that the termination did not violate the deputy's constitutional rights because the sheriff had a rational policy of not allowing deputies to prosecute prisoners without his approval. The second, Berry v. Bailey, 726 F.2d 670 (11th Cir. 1984), cert. denied, 471 U.S. 1101 (1985), held that a deputy's refusal to dismiss charges against certain

4

arrestees when requested to by the sheriff (allegedly for the improper purpose of helping the sheriff's reelection chances) was not constitutionally protected speech under the First Amendment and thus the deputy's resultant termination was permissible.

Gamache attempts to distinguish <u>Funn</u> and <u>Berry</u> by arguing that those are "sheriff" cases, whereas she works for the parole department. This argument is unavailing because even were we to conclude that those cases are distinguishable, appellants would still be entitled to qualified immunity since Gamache's discharge for refusing her supervisor's request to dismiss the warrants did not violate clearly established law.*

Since their actions did not violate any clearly established constitutional right, appellants were entitled to summary judgment on the basis of qualified immunity.

<u>CONCLUSION</u>

For the reasons stated herein, we reverse the judgment of the district court and remand with instructions to enter summary judgment in favor of the appellants.

<u>REVERSED</u>

_____

*Moreover, as the termination letter makes clear, Gamache committed a number of acts which independently justify the termination of her employment. <u>See</u> J.A. at 24-26, 75.

5