Robert STEWART, Plaintiff,

v.

BEAUFORT COUNTY, Beaufort County Sheriff's Department, and Todd Calhoun, Defendants.

C.A. No. 9:06–0624–PMD.

United States District Court,
D. South Carolina,
Beaufort Division.

Feb. 6, 2007.

Jared Sullivan Newman, Newman and McDougall, Beaufort, SC, for Plaintiff.

Marshall H. Waldron, Jr., Keely M. McCoy, Carolina Litigation Associates, Bluffton, SC, for Defendants.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Defendants' Motion for Summary Judgment. Plaintiff Robert Stewart ("Stewart") has filed a timely response to this Motion. For the following reasons, the court denies Defendants' Motion. However, because a federal court has no jurisdiction to hear a state law cause of action against the State of South Carolina, the court remands to state court the tort cause of action asserted against the Beaufort County Sheriff's

Department. The court further orders that this matter is stayed until Stewart's pending criminal charges have been adjudicated.

## BACKGROUND

On September 26, 2004, Stewart was lawfully arrested on outstanding bench warrants by deputies of the Beaufort County Sheriff's Department at the Smokers' Express in Beaufort, South Carolina. Prior to placing him in the patrol car for transportation to the detention center for booking, arresting officer Defendant Deputy Todd Calhoun ("Deputy Calhoun") and his partner handcuffed Stewart's hands behind his back and searched him for weapons.

Once in the sally port of the Beaufort County Detention Center, Deputy Calhoun and Stewart offer different versions of what transpired:

According to Deputy Calhoun, Stewart became "very agitated" and kicked the door of the patrol car as he got out of the vehicle in the sally port. Deputy Calhoun allowed Stewart to exit the vehicle unassisted, but then put his hand underneath Stewart's arm, as he had been trained to do, and attempted to escort Stewart into the Detention Center. As they approached the intake door, Stewart attempted to pull free, and "once [they] got to the door, [Stewart] panicked." Deputy Calhoun claims that when he attempted to get control of Stewart by pushing him against the intake door area, Stewart struck him in the chest with either his shoulder or elbow. When that occurred, Deputy Calhoun pushed Stewart into the door jamb again and then put Stewart on the floor and put his knee in Stewart's back. Deputy Calhoun then called for as-

sistance, and the deputies took Stewart to the hospital. Deputy Calhoun asserts that he used force in this case in the manner in which he had been trained in order to gain control over a resisting detainee.

Stewart's version of events is markedly different: Stewart asserts that he did not resist or struggle against Deputy Calhoun on the way into the Detention Center. Stewart claims Deputy Calhoun had his arm "jacked up real high" which was hurting him, and that after Stewart asked him to "quit," Deputy Calhoun intentionally and maliciously slammed him against the door of the sally port. Then, when his head pulled back in response to having been struck so violently, Deputy Calhoun again slammed Stewart's face into the door jamb, then threw him onto the ground and ground his knee into his back.[1] Stewart asserts that this use of force was unprovoked and excessive.

Throughout the entire use of force, it is uncontested that Stewart's hands were handcuffed behind his back. It is also uncontested that, as a result of the use of force, Stewart suffered lacerations and contusions to his face, nose, eyes, lips, shoulder and back that required immediate medical attention. Stewart claims to have received about eight stitches for a laceration on his cheek.

Stewart was subsequently charged criminally with assault and battery for allegedly striking Deputy Calhoun in the sally port. Stewart has entered a plea of not guilty and has requested a jury trial. At this time, these charges are still pending in South Carolina court.

On January 17, 2006, Stewart filed this lawsuit in the Court of Common Pleas for Beaufort County, South Carolina. Stewart

---

1. On September 14, 2006, at his first deposition in this case, Stewart asserted his Fifth Amendment privilege, and did not answer any questions about this incident. On January 8, 2007, although the assault and battery charge was still pending, Stewart agreed to answer questions regarding the incident.

asserted causes of action for assault and battery against Defendant Deputy Todd Calhoun and for gross negligence against the Beaufort County Sheriff's Department, pursuant to the South Carolina Tort Claims Act.[2] Stewart also asserted that his constitutionally protected civil rights have been violated and brought an action for damages against Deputy Calhoun pursuant to 42 U.S.C. § 1983.

Defendants removed the matter to this court pursuant to 28 U.S.C. § 1441 on March 2, 2006.

### DISCUSSION

**I. Legal Standard for Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

**II. 42 U.S.C.1983**

 Stewart's federal claim is under 42 U.S.C. § 1983, which permits lawsuits against persons acting under color of state law for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To state an action under § 1983, a plaintiff's claim "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994)). Defendants assert that Stewart's § 1983 claim is subject to summary judgment because (1) Deputy Calhoun is not a "person" within the meaning of 42 U.S.C. § 1983 and (2) Deputy Calhoun is entitled to qualified immunity.

---

**2.** The Complaint actually asserted this cause of action against "Beaufort County," not the Beaufort County Sheriff's Department. In his Response, Stewart concedes that Beaufort County is not a proper party to this action and voluntarily dismissed this entity. (Pl. Response to Mot. For Sum. Judg. at 10.) Stewart claims that he named Beaufort County as a defendant in error, and that he meant to assert this cause of action against the Sheriff's Department. For purposes of this Order, the court addresses the gross negligence claim as if it had been asserted against the Beaufort County Sheriff's Department.

## A. Is Deputy Calhoun a "Person" under 1983?

 Defendants argue that Deputy Calhoun is a "state official" and is not a "person" within the meaning of 42 U.S.C. § 1983. Obviously, state officials literally are persons, "[b]ut a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) *(citing Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)). As such, it is no different from a suit against the State itself, and is therefore barred under the Eleventh Amendment. *Will*, 491 U.S. at 71, 109 S.Ct., at 2312; *see, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). Defendants assert that, because the Complaint does not *explicitly* state that the claims against Deputy Calhoun are asserted against him "in his individual capacity," it states a claim against him in his official capacity. As such, Defendants argue that the claims against Deputy Calhoun are not asserted against a "person" as required for recovery under § 1983.

The court disagrees. The Complaint clearly requests "actual and punitive damages against the defendant Calhoun." [Complaint at 4.] Although the Complaint does not use the magic words "in his individual capacity," it clearly seeks recovery from Todd Calhoun, and not from the State of South Carolina. Accordingly, the court finds that the Complaint asserts a cause of action against a person, Todd Calhoun.

## B. Is Deputy Calhoun Entitled to Qualified Immunity?

 Under the doctrine of qualified immunity, law enforcement officers performing their discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In excessive force cases, an officer's entitlement to qualified immunity must be analyzed in two steps, which are to be "considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The "threshold question" requires a court to resolve whether, "[t]aken in the light most favorable to the party asserting the injury, the facts alleged show [that] the officer's conduct violated a constitutional right." *Id.* at 201, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272. "If no constitutional right would have been violated," even when the facts are viewed in the best light for the injured plaintiff, the analysis ends; the plaintiff cannot prevail. *Id.* However, if, taking the evidence in the best light for the plaintiff, the plaintiff has stated a violation of a constitutional right, the court proceeds to the second step. "[T]he next, sequential step is to ask whether the right was clearly established" at the time of the events at issue. *Id.* If not, the qualified immunity doctrine still provides a defendant officer with immunity from suit. If so, summary judgment must be denied. *See Jones v. Buchanan*, 325 F.3d 520, 526–527 (4th Cir.2003).

Therefore, in order for Stewart to defeat Defendants' motion for summary judgment, (1) there must be a genuine factual dispute as to whether Defendants violated Stewart's constitutional rights, and (2) those rights must have been clearly estab-

lished at the time he suffered his injuries on September 26, 2004.

### (1) Does Stewart Present a Genuine Issue of Material Fact as to Whether Deputy Calhoun Violated his Constitutional Rights?

The court turns first to the "threshold" question: whether, "[t]aken in the light most favorable to the party asserting the injury," the facts show that Deputy Calhoun's "conduct violated a constitutional right." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272. Stewart argues that the facts, considered in the light most favorable to him, demonstrate that Deputy Calhoun violated his rights under the Constitution.

■ The Supreme Court has instructed the court that "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). The key to this determination is Stewart's status—whether an arrestee or a pretrial detainee—at the time of the use of force. *Id.* The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. *Graham v. Connor*, 490 U.S. at 388, 109 S.Ct. at 1867–68. A pretrial detainee, however, is entitled only to the protections of the Due Process Clause of the Fourteenth Amendment. *U.S. v. Cobb*, 905 F.2d 784 (4th Cir.1990). The court notes that it is often not clear when an arrestee becomes a pretrial detainee for purposes of determining the applicable constitutional protection.

In *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir.1997), the Fourth Circuit rejected the concept of a "continuing seizure" and found that Riley was a "pretrial detainee" and not an "arrestee" where the critical events occurred two hours and ninety miles from the time and place of Riley's arrest. *Riley* also rejected limiting Fourth Amendment coverage to the period the suspect remains with the arresting officer. 115 F.3d at 1163. *Riley* did not, however, establish a simple rule to determine when Fourth Amendment protection ends. *Riley* indicates that the Fourth Amendment thus applies to the "initial decision to detain an accused," *Bell v. Wolfish*, 441 U.S. 520, 533–34, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979), not to the conditions of confinement after that decision has been made. Indeed, in defining the nature of "seizure" in the context of an arrest, the Supreme Court quoted *Thompson v. Whitman*, 18 Wall. 457, 471, 21 L.Ed. 897 (1873), for the proposition that "[a] seizure is a single act, and not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991).

■ For purposes of determining constitutional protections, the holding in *Riley* instructs the court that a person is an "arrestee" when an officer decides to detain, and that the Fourth Amendment applies only to the single act of the arrest. Applying this rule to the case at hand, it follows that Stewart was an arrestee during his arrest in the parking lot of Smoker's Express. By the time he arrived in the sally port of the Beaufort County Detention Center, however, he was lawfully arrested and being held prior to a formal adjudication of guilt, and was therefore a pretrial detainee. *See Bartram v. Wolfe*, 152 F.Supp.2d 898, 910–911 (S.D.W.Va.2001).

■ The applicable legal standard for cases claiming use of excessive force during pretrial detention is found in *Riley v. Dorton, Taylor v. McDuffie*, 155 F.3d 479 (4th Cir.1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115

(1999), and *Gray v. Spillman,* 925 F.2d 90 (4th Cir.1991). In *Riley,* the Fourth Circuit held that "excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." 115 F.3d at 1166. Under the Due Process Clause, if Stewart is to prevail, he must show that Defendant "inflicted unnecessary and wanton pain and suffering." *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In determining whether the force used in this case was unnecessary and excessive, the fact finder must consider such factors as (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Cobb,* 905 F.2d at 789 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *Taylor,* 155 F.3d at 483 (quoting *Whitley,* 475 U.S. at 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251). In addition, Stewart must show that the injuries resulting from the force applied were more than *de minimis. Riley,* 115 F.3d at 1167 (holding that a pretrial detainee need not sustain a severe or permanent injury in order to have an actionable excessive force claim, but injury must be more than *de minimus); Taylor,* 155 F.3d at 483; *but see Watford v. Bruce,* 126 F.Supp.2d 425 (E.D.Va.2001) (holding that where prison officials maliciously and unprovokedly use force to cause harm, inmates need not present evidence of significant injury to state a cause of action under § 1983).

In this case, Stewart testified that he was handcuffed and unresisting when Deputy Calhoun used force against him that resulted in serious injuries. The court finds that a state official's use of force against an unresisting pretrial detainee that causes the types of injuries allegedly sustained by Stewart is unnecessary and excessive. Although Deputy Calhoun asserts that the use of force was necessary because Stewart had assaulted him, the court must, at this point, consider the evidence in the light most favorable to Stewart. Accordingly, a genuine issue of material fact exists as to whether the use of force was excessive in violation of Stewart's rights under the Due Process Clause.

**(2) Was Stewart's Right To Be Free From Excessive Force Clearly Established?**

The court must next determine whether, at the time of the alleged violation, the right to be free from excessive force was clearly established. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "If the law did not put the officer on notice that his conduct would be clearly unlawful," qualified immunity should be granted. *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156.

The court concludes that, at the time of the events in question, it was clearly established that the unnecessary use of force against an unresisting, handcuffed pretrial detainee resulting in more than *de minimus* injuries is an excessive use of force in violation of the Due Process Clause. Accordingly, the court finds that summary judgment on Stewart's § 1983 claim is not merited at this time.

**III. State Law Claims for Assault and Battery and Gross Negligence**

Defendants also assert that Stewart's state law claims are subject to summary judgment because (1) Deputy Calhoun is immune from liability for any tort he allegedly committed within the scope of his

employment and (2) the Beaufort County Sheriff's Department is immune from suit.

## A. Assault and Battery against Defendant Deputy Calhoun

 Stewart asserts a cause of action against Defendant Deputy Calhoun for assault and battery. Defendants assert that this state law cause of action is subject to summary judgment because Deputy Calhoun is immune from suit under the South Carolina Tort Claims Act ("SCTCA"). The SCTCA provides the "exclusive remedy for any tort committed by an employee of a governmental entity." S.C.Code § 15–78–70(a). Under this Act, an employee of a governmental entity who commits a tort while acting within the scope of his official duty is immune from liability for that tort; however, an employee is not entitled to immunity if it is proven that the employee's conduct constituted "actual malice" or "intent to harm." S.C.Code § 15–78–70(b). Defendants assert that Stewart fails to present evidence that Deputy Calhoun's conduct rose to this level, and that he is therefore immune from suit.

In this case, Stewart testifies that Deputy Calhoun's use of force against him was excessive, unwarranted, and malicious. [Complaint ¶ 7; Stewart Deposition p. 39–42.] Under South Carolina law, if a Sheriff's deputy "uses excessive force, or 'force greater than is reasonably necessary under the circumstances,' he may be [personally] liable for assault." *Roberts v. City of Forest Acres,* 902 F.Supp. 662, 671 n. 2 (D.S.C.1995) (quoting *Moody v. Ferguson,* 732 F.Supp. 627, 632 (D.S.C.1989)). Accordingly, the court finds that a genuine issue of material fact exists as whether Deputy Calhoun is entitled to immunity for the assault and battery claim. For this reason, summary judgment on Stewart's cause of action for assault and battery against Calhoun is not appropriate at this time.

## B. Gross Negligence against Defendant Beaufort County Sheriff's Department

 Stewart also asserts a cause of action against the Beaufort County Sheriff's Department, alleging that the Office of the Sheriff was grossly negligent in its care custody and control of Stewart, thereby causing his injuries. The court finds, however, that a federal court lacks jurisdiction to hear a cause of action against a South Carolina Sheriff's Department, as such a suit is barred by state immunity.

 States enjoy immunity from suit in federal court by citizens of another state or citizens of foreign states. U.S. CONST. amend. XI. Additionally, a federal court may hear no state law claim against a State or state agency absent the State's express consent to be sued in federal court. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As such, an action against South Carolina will not lie in this court without South Carolina's express waiver of Eleventh Amendment immunity.

 It is well-established in South Carolina that a sheriff's office is an agency of, and a sheriff "dominated by," the state, such that a suit against the sheriff in his official capacity is a suit against the State. *Gulledge v. Smart,* 691 F.Supp. 947 (D.S.C.1988), *affd.* 878 F.2d 379 (1989) (discussing sheriff as an agent and alter ego of the state). As such, this cause of action against the Beaufort County Sheriff's office is a suit against the State of South Carolina itself. *Carroll v. Greenville County Sheriff's Dept.,* 871 F.Supp. 844, 845–846 (D.S.C.1994); *see Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *see also Monell v. De-*

*partment of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

For tort claims, South Carolina has only *partially* waived sovereign immunity via the South Carolina Tort Claims Act. The SCTCA, which is the "exclusive remedy for any tort committed by an employee of a governmental entity," specifically reserved South Carolina's Eleventh Amendment immunity from suit in federal court. S.C.Code § 15–78–20(e) ("Nothing in this chapter is construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina."). As Stewart asserts this "gross negligence" claim only against the Sheriff's Department, that is to say, the state of South Carolina, this court lacks jurisdiction to hear the cause of action. For this reason, the court remands this claim against the Defendant Beaufort County Sheriff's Department to state court.

**IV. This Matter Must Be Stayed Until the State Court Has Adjudicated Stewart's Pending Assault and Battery Charges**

 Pursuant to section 1983, Stewart seeks damages for Deputy Calhoun's allegedly excessive use of force against him. In order to rule on this claim, the fact finder must first decide what transpired in the sally port of the Beaufort County Detention Center on September 26, 2004. If, as Defendants assert, Stewart assaulted Deputy Calhoun, then the application of a reasonable amount of force to restore order was appropriate.[3] If, however, Stewart was compliant and the use of force was unprovoked and malicious, then Deputy Calhoun's use of force was excessive and violated Stewart's rights under the Due Process Clause. As such, determining whether Stewart assaulted Deputy Calhoun is indispensable to deciding whether Stewart is entitled to damages. This court is aware that the state court must make this same factual determination when it adjudicates Stewart's pending criminal assault and battery charges. Accordingly, the court is concerned that a determination in this case will interfere with and be disrespectful to the pending state criminal proceeding.

 Absent extraordinary circumstances, a federal court must abstain from exercising federal jurisdiction when to do so would interfere with a pending state criminal proceeding. *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (holding that federal court must abstain from enjoining state criminal proceeding); *see also Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (holding that federal courts may not provide a plaintiff with declaratory relief when he or she is subject to pending state

---

**3.** While it is possible that the use of force was excessive *even if* Stewart assaulted Deputy Calhoun, it is extremely unlikely. Stewart's alleged injuries—lacerations and bruises—are not serious. While the severity of injury is not the focus of the court's analysis where a use of force is *unprovoked,* a plaintiff fails to state an excessive force claims where the use of force was necessary and the injuries inflicted indicate that the force used was negligible. *See U.S. v. Bailey,* 444 U.S. 394, 423, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (holding that regardless of the severity of the resulting injury, it cannot be doubted that *unprovoked* violence and brutality inflicted by prison guards upon inmates violates the Eighth Amendment); *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir.1998) (where the need for force has been established, the injuries resulting from that force must be more than *de minimis* to support a claim of excessive force). Accordingly, because Stewart's injuries were slight, Stewart will most likely prevail only if the jury finds that the use of force against him was unprovoked.

court criminal prosecution). An unresolved question is whether a federal court may provide monetary relief to an individual who is a state court criminal defendant when the damages claim arises out of the same matter as is pending in state court. The Supreme Court has not addressed whether *Younger* abstention applies to § 1983 claims for damages, *see Deakins v. Monaghan,* 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988) ("We need not decide the extent to which the *Younger* doctrine applies to a federal actions seeking only monetary relief."), and the Ninth Circuit has recently recognized that the applicability of *Younger* to damages actions remains "unclear." *Martinez v. Newport Beach City,* 125 F.3d 777 (9th Cir.1997); *see also Hirsh v. Justices of the Supreme Court,* 67 F.3d 708, 715 n. 5 (9th Cir.1995). In *Deakins v. Monaghan,* the Supreme Court held that, because the state proceedings could not have awarded damages, the district court erred in dismissing the federal court plaintiffs' claim for monetary relief; however, the Court explained that the federal court should have *stayed,* not dismissed, the federal litigation.

Lower courts also hold that *Younger* requires that courts stay—rather than abstain and dismiss—suits for monetary relief where the same issues are pending before a state court. The Sixth, Third, and Seventh Circuits have held that "[i]f the requirements for *Younger* abstention are met, ... the prevailing approach is to stay the § 1983 action for damages pending resolution of the state proceeding." *See Carroll v. City of Mount Clemens,* 139 F.3d 1072, 1075–76 (6th Cir.1998); *Simpson v. Rowan,* 73 F.3d 134, 138–9 (7th Cir.1995); *Williams v. Hepting,* 844 F.2d 138, 144 (3d Cir.1988). This approach "protect[s] against the possibility that [the plaintiff] could be deprived of the opportunity to present the merits of her damages claim in state court." *Carroll,*

139 F.3d at 1075–76. A stay ensures that a federal plaintiff who is unable to pursue damages in the parallel state proceedings can return to federal court and reassert his claim for damages without being time-barred. *See id.* at 1076 (observing that "a stay will protect [the plaintiff's] claims from the statute of limitations"). Moreover, staying rather than dismissing the action is consistent with the Supreme Court's decision in *Quackenbush v. All-state Ins. Co.,* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), in which the Court observed that "we have applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether." *Dowden v. City of Sacramento,* 40 F.Supp.2d 1146, 1151 (E.D.Cal.1999) (citing *Quackenbush,* 517 U.S. at 719, 116 S.Ct. at 1722).

In *Suggs v. Brannon,* the Fourth Circuit also held that "*Younger* does not invariably require dismissal of § 1983 damage actions" where the federal court is asked to determine issues pending before a state court; however, a stay is appropriate in such situations. 804 F.2d 274, 279–280 (4th Cir.1986). In *Suggs,* the plaintiffs were employees of an adult bookstore who were the subjects of multiple state prosecutions for possession with intent to distribute obscenity. While their state criminal charges were pending, the plaintiffs brought civil rights actions against the police officers who investigated and arrested plaintiffs, seeking injunctive relief and damages under section 1983. The plaintiffs alleged that the police officers engaged in illegal searches and seizures, a concerted campaign of threats, harassment, and bad faith enforcement of North Carolina obscenity laws, thereby denying plaintiffs due process of law in violation of their Fourteenth Amendment rights. Chief Judge Hiram Ward dismissed the

complaint pursuant to *Younger* abstention doctrine. The Fourth Circuit upheld Judge Ward's dismissal of the claim for injunctive relief, but held that the claim for damages should have been stayed rather than dismissed. The Court explained its ruling as follows:

> *Younger* abstention presupposes that the federal plaintiff will have an adequate opportunity to raise constitutional claims during the ongoing state proceeding. *See Craig v. Barney*, 678 F.2d 1200, 1201–02 (4th Cir.1982). A state criminal proceeding, however, ordinarily would not address issues such as appellants' claim that they were held under excessive bond and unconstitutional bail conditions, for pretrial detention issues cannot be raised in defense of a criminal prosecution. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975). If the state criminal court rules that the search and seizure was unlawful, Smith could not recover damages in those proceedings. Deferring the appellants' right to institute an action for damages until the conclusion of the criminal cases might cause their claims to be barred by a statute of limitations. Thus, in order to afford plaintiffs a day in court, they should be allowed to maintain their actions for damages. *See Hanpar v. Atkinson*, 496 F.Supp. 112, 115 (E.D.Va. 1980).

The appellees argue that the exercise of federal jurisdiction would result in simultaneous litigation of the same issues in which the district court's ruling might embarrass and interfere with the state proceedings. This need not be the case. In *Giulini v. Blessing*, 654 F.2d [189,] 193 [(2d Cir.1981)], the court, deciding that a § 1983 damage claim is not barred by *Younger*, noted that "a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." The court then ordered that the damage claims be held in abeyance until the state court had adjudicated the relevant constitutional issues.

The district court did not address the merits of the damage claim, nor do we. A stay is appropriate. If the criminal trials provide the parties with a full and fair opportunity to litigate their constitutional claims, they may then possibly assert the state court judgment to preclude either claim or defense as the case may be. But this is not the appropriate proceeding for resolving this issue. *See generally* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4471 (1981 & 1986 Supp.).

In the case *sub judice*, Stewart is asking the federal court to make factual determinations identical to the factual determinations that must also be made by the state court. As such, proceeding in this case would result in simultaneous litigation of the same issues such that this court's ruling might embarrass and interfere with the state proceedings. Further, a determination by the state court that Stewart assaulted Deputy Calhoun would be binding on this court and would preclude Stewart from asserting that Deputy Calhoun's use of force was unprovoked. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (holding that a state prisoner cannot base a § 1983 action on a ground that would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement"). For these reasons, the court exercises its discretion and stays proceedings in this action pending a decision by the state court regarding Stewart's assault and battery charges, with a view to avoiding wasteful duplication of judicial resources

and having the benefit of the state court's views.

## *CONCLUSION*

It is hereby **ORDERED** that, because this court has no jurisdiction to hear a state law cause of action against the State of South Carolina, Plaintiff's **FIRST CAUSE OF ACTION** for gross negligence asserted against the Defendant Beaufort County Sheriff's Department is **REMANDED** to state court.

It is further **ORDERED** that Defendants' Motion for Summary Judgment is otherwise **DENIED.**

It is further **ORDERED** that this matter is **STAYED** pending a decision by the state court regarding Stewart's pending criminal assault and battery charges.

**AND IT IS SO ORDERED.**